IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-01689-MSK-BNB

BRIAN PATRICK SPENSER PERCEVAL,

Plaintiff,

v.

GRAYSON ROBINSON, Sheriff,
MRS. ELAINE, HSA,
JOHN DOE I, Deputy Sheriff,
JOHN DOE II, Deputy Sheriff,
JOHN DOE III, Deputy Sheriff,
JANE DOE I, Nurse,
JANE DOE II, Nurse, and
JANE DOE III, Nurse,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)** [Doc. #17, filed 09/26/2012] (the "Motion") filed by defendants Grayson and Meyer (the "defendants"). I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded

allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff filed his Amended Prisoner Complaint on August 23, 2012 [Doc. #9] (the "Complaint"). At all times pertinent to the allegations of the Complaint, he was a pretrial detainee in the Arapahoe County Detention Facility ("ACDF"). The Complaint contains the following allegations:

1.  The plaintiff was transferred to ACDF from the Denver County Jail on May 16, 2012. *Complaint*, p. 5.[1]

2.  During the initial booking process at ACDF, the plaintiff's medications (two Proventil inhalers for chronic obstructive pulmonary disease and Nitroglycerin tablets for chest pain) were confiscated and disposed of by an unknown staff member. The plaintiff was also forced to provide an oral swab for DNA testing. He was told that the DNA sample would be destroyed if he were found not guilty of the charges against him. Id. at pp. 5-6

3.  On May 16 and 17, 2012, the plaintiff made repeated requests to staff to use the

---

[1] Citation is to the page numbers of the Complaint as they are assigned by the court's docketing system.

inhaler for shortness of breath and the Nitroglycerin for chest pains. His requests were denied or ignored. Id. at p. 5.

4. On May 16, 2012, the plaintiff signed a release to enable ACDF to obtain his medical records from the VA. The plaintiff advised staff that the Denver County Jail already had the records. The plaintiff also completed a form listing his medical problems and medications. Id. at p. 6.

5. On May 17, 2012, the plaintiff was still in "the fish tank" in "booking." A nurse asked him if he had been given a TB skin test. He said he had one on May 14, 2012, at the Denver County Jail; it was positive; his TB tests are always positive; he was tested at Samaritan House in October 2011; and he was cleared by the VA after he had a chest x-ray. Several hours later, he was taken to the infirmary. He was forced to wear a mask and was placed in a medical isolation cell. Id.

6. While in medical isolation, the plaintiff was locked down 24 hours a day, 7 days a week in total isolation without access to a telephone, writing material, exercise, or a shower. Id. at pp. 7-8.

7. On the evening of May 17, 2012, the plaintiff repeatedly asked for his medications, soap, a toothbrush, toothpaste, and a book to read. None were provided. Id. at p. 6.

8. On the morning of May 18, 2012, the plaintiff was transported to Denver Health Medical Center. A chest x-ray and a sputum sample were taken. Id. A nurse took his complete medical history. After consulting with a doctor, the nurse told him he was fine. She removed his mask and threw it away. He was told it would take six weeks to receive the results of the sputum sample. Id. at p. 7.

9. The plaintiff was transported back to ACDF and placed in the infirmary without a mask. He asked the transport officer if he could make a phone call. He did not get to make a phone call. Id.

10. On May 18, 2012, the plaintiff was informed by a nurse and a deputy that he would remain in medical isolation until the results of his sputum sample were known. The plaintiff advised them that he had been cleared by Denver Health Medical Center and that they were violating his rights. He started a hunger strike in protest. He demanded a grievance form. His protests went unheeded and he was not given a grievance form. He still had no soap, toothbrush, toothpaste, razor, or book. Id.

11. The plaintiff was given his medications by different nurses. Some nurses would let him step outside the cell without wearing a mask to receive his medications; others would unlock the cell door and hand him his medications without requiring him to wear a mask. Some nurses refused to give him his medication unless he had a mask on. The plaintiff refused to wear a mask. The plaintiff states that "[o]n every occasion that I was refused medication by staff I advised them that I was not refusing medication, merely refusing to wear a mask, and that if they falsified the medical records to say I had refused my medication they were commiting [sic] a crime." Id. at p. 8.

12. The plaintiff was transported to Denver Health Medical Center for a second sputum sample on May 21, 2012, and again for a third sample on May 22, 2012. He wore a mask both times because he was told that if he did not wear a mask, he would not be transported and would remain in isolation indefinitely. Id.

13. On May 20, the plaintiff was finally provided with soap, a toothbrush, toothpaste,

and a book. Id. at p. 9.

14. On May 23, 2012, the plaintiff was informed that he was being released from medical isolation. He was taken to a "classification tank." He had his first meal in 5 days, and he was permitted to make a phone call. After his release from medical isolation, the plaintiff repeatedly requested to file a grievance regarding the way he was treated in medical isolation. He was told that his requests were denied because the problems no longer existed and, therefore, the plaintiff no longer had a grievance. Id. at p. 9.

15. On May 25, 2012, while housed in Tank 6F, the plaintiff was denied an Albuterol inhaler. He demanded a grievance form. His demand was denied. Id.

16. On June 6, 2012, the plaintiff was written up for "failure to address staff properly" after he complained about waiting five days to get medication for his feet. He was also transferred to Tank 3A, and faces possible administrative detention for the write-up. Id.

The plaintiff asserts five claims. Claim One alleges that defendants Jane Doe I, Robinson, and Meyer[2] violated the plaintiff's due process rights when on May 16 and 17, 2012, Jane Doe I refused the plaintiff's requests for his medications pursuant to "policy." Id. at p. 10.

Claim Two alleges that defendants Jane Doe II, John Doe I, Robinson, and Meyer violated the plaintiff's due process rights when Jane Doe II and John Doe I placed the plaintiff in medical isolation on May 18, 2012, pursuant to "policy" even though the plaintiff told them he had been medically cleared for tuberculosis by Denver Health Medical Center. Id. at p. 11.

Claim Three alleges that defendants Jane Doe III, John Doe II, John Doe III, Robinson,

---

[2]The Complaint names as a defendant "Mrs. Elaine, HSA." The defendants assert that the defendant's full name is Elaine Meyer. *Motion*, p. 1, n.1. Therefore, I refer to her as defendant Meyer.

and Meyer violated the plaintiff's First Amendment, Eighth Amendment, and due process rights when from May 18, 2012, to May 23, 2012, Jane Doe III repeatedly denied the plaintiff his medications and John Does II and III denied the plaintiff access to a telephone, exercise, reading materials, and toilet articles. Id. at p. 12.

Claim Four alleges that defendants Robinson and Meyer violated the plaintiff's First Amendment, Eighth Amendment, and due process rights when the plaintiff was repeatedly denied exercise, access to reading and writing materials, access to grievances, medical requirements, and the right "to voice protests in regard to these matters" from May 16, 2012, to June 27, 2012, "all under the auspices of the rules, regulations, and policies of both defendants." Id. at p. 13.

Claim Five alleges that defendant Robinson violated the plaintiff's Fourth and Fourteenth Amendment rights when he was forced to submit to a DNA swab sample pursuant to "Jail, Sheriff's, policy." Id. at p. 14.[3]

The plaintiff is suing the defendants in their official and individual capacities. *Plaintiff's Opposition to Defendants' Motion to Dismiss* [Doc. #20] (the "Response"), p. 6. He seeks declaratory, injunctive, and monetary relief. Id. at pp. 16-17.

---

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

6

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Individual Capacity Claims

The defendants argue that they are entitled to qualified immunity on the individual capacity claims. *Motion*, pp. 15-17.  Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors.  I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right.  In addition, I must inquire whether the right was clearly established at the time of the violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas,

172 F.3d 736, 745 (10th Cir. 1999).[4]

The Tenth Circuit Court of Appeals has stated that although "[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment,[5] . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999). A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).

To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment violation. Id. at 298. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).

To satisfy the subjective component, plaintiffs must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at

---

[4] The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

[5] Therefore, to the extent the plaintiff asserts claims under the Eighth Amendment, I construe them as claims brought pursuant to the Due Process Clause.

837.

### 1. Claim One

In Claim One, the plaintiff alleges that defendants Robinson, Meyer, and Jane Doe I violated his due process rights on May 16 and 17, 2012, when Jane Doe I refused the plaintiff's requests for his medications pursuant to "policy." Id. at p. 10. The plaintiff alleges that his inhalers and Nitroglycerin were taken from him upon his arrival to ACDF. He further alleges that while he was still in the booking department on May 16 and 17, 2012, he made repeated requests to use his medications for shortness of breath and chest pains but was denied pursuant to policy "even though it was evident that [he] was in distress." Id. at pp. 5-6, 10. The plaintiff alleges that the denial of his medications was due to the "rules, regulations, and policies" of defendants Robinson and Meyer. Id. at p. 13.

An individual cannot be held liable under section 1983 unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted). Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official. Id. at 1163.

Construing all reasonable inferences in favor of the plaintiff, as I must at this stage of the

litigation, the plaintiff has sufficiently alleged that Robinson and Meyer promulgated a policy that prohibited staff from providing necessary medications to the plaintiff in the booking department. "[W]hen an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question." Dodds v. Richardson, 614 F.3d 1185, 1200 n. 8 (10th Cir. 2010) (internal quotations and citation omitted). Accordingly, the Motion should be denied insofar as it seeks dismissal of Claim One.

### 2. Claim Two

In Claim Two, the plaintiff alleges that defendants Robinson, Meyer, Jane Doe II, and John Doe I, violated his due process rights when Jane Doe II and John Doe I placed him in medical isolation on May 18, 2012, pursuant to "policy" even though the plaintiff told them he had previously been cleared for tuberculosis. Id. at p. 11. These allegations, without more, are not sufficient to state a constitutional violation against any of the defendants. Claim Two should be dismissed in its entirety. Because this is the only claim brought against Jane Doe II and John Doe I, those defendants should also be dismissed.

### 3. Claim Three

In Claim Three, the plaintiff alleges that defendants Jane Doe III, John Doe II, John Doe III, Robinson, and Meyer violated the plaintiff's First Amendment and due process rights when he was in medical isolation from May 18 through 23, 2012. Specifically, he alleges that Jane Doe III repeatedly denied the plaintiff his medications and John Does II and III denied the plaintiff access to a telephone, exercise, reading materials, and toilet articles. Id. at p. 12.

Alvarado v. KOB-TV, 493 F.3d at 1215 n.2, provides that "courts should look to the

specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).

The plaintiff does not provide any factual allegations regarding Jane Doe III's denial of his medications. In his description of the nature of the case, he alleges that while in medical isolation he was given his medications by different nurses and that some nurses would administer his medications without requiring him to wear a mask while other nurses required him to wear one. These allegations are insufficient to state a plausible claim that Jane Doe III was deliberately indifferent to the plaintiff's medical needs.

The plaintiff alleges that while he was in medical isolation from May 18 through 23, 2012, he was locked down 24 hours a day in total isolation with no access to a telephone or writing material, no exercise, and no shower. Id. at pp. 7-8. He further alleges that on his first night in medical isolation (May 17, 2012) his repeated requests for soap, a toothbrush, toothpaste, and a book to read were denied. Id. at p. 6. He was not provided with soap, a toothbrush, toothpaste, and a book until May 20, 2012.

"The failure to provide basic necessities, if sufficiently prolonged and severe, can satisfy the objective prong" of the deliberate indifference test. Allen v. Avance, 491 Fed.Appx. 1, 4 (10th Cir. 2012) (citing Mitchell v. Maynard, 80 F.3d 1433 (10th Cir. 1996)). "This inquiry turns not only on the severity of the alleged deprivations, but also on their duration." Id. (citing Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998)).

11

In <u>Allen</u>, the court found that an inmate satisfied the objective prong when he alleged that he was placed in a holding cell for seven days, then subsequently for four days without a mattress, blankets, towels, toilet paper, toothpaste, a toothbrush, personal property, legal papers, access to the commissary, or visitation. <u>Allen</u>, 491 Fed.Appx. at 4-5. The cell had standing water on the floor during part of that time. <u>Id.</u> at 5.

In <u>Mitchell</u>, the court found that the plaintiff stated a claim under the Eighth Amendment when he alleged "numerous and inhumane" conditions:

> The facts, construed in Mr. Mitchell's favor, indicate Mr. Mitchell was stripped of his clothing, placed in a concrete cell, with no heat at a time when nighttime temperatures hovered in the mid-fifties, provided no mattress, blankets or bedding of any kind, deprived of his prescription eyeglasses, not allowed to leave his cell for exercise, not provided with writing utensils, not provided with adequate ventilation, not provided with hot water, and only sometimes allowed minimal amounts of toilet paper. These conditions supposedly lasted for a period of days, weeks and months depending on the condition and whether Mr. Mitchell's or Mr. Saffle's testimony is believed. The combination of these factors is a significant departure from the "healthy habilitative environment" the state is required to provide its inmates.

<u>Mitchell</u>, 80 F.3d at 1442.

The Tenth Circuit Court of Appeals has stated that "there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment." <u>Perkins v. Kansas Dept. of Corrections</u>, 165 F.3d 803, 810 (10th Cir. 1999). In <u>Perkins</u>, the court determined that the plaintiff stated an Eighth Amendment claim where he was denied all outdoor exercise for more than nine months. The court cited <u>Bailey v. Shillinger</u>, 828 F.2d 651, 653 (10th Cir. 1987), where it found no Eighth Amendment violation resulting from denial of exercise and fresh air while in segregation for an

unspecified amount of time and one hour per week of outdoor recreation thereafter. The court also cited Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994), where it concluded that the plaintiff stated an Eighth Amendment claim when he alleged that he had received only thirty minutes of out-of-cell exercise in three months.

Here, the plaintiff alleges that (1) for five days, he was in total isolation[6] with no access to a telephone or writing material, no exercise, and no shower; and (2) for three days, he was denied his requests for soap, a toothbrush, toothpaste, and a book. He does not allege that he was denied bedding, heat, food, or water, or that the cell was unsanitary or otherwise uninhabitable. Guided by the cited cases, I find that the plaintiff has failed as a matter of law to allege a sufficiently serious deprivation to satisfy the objective prong of the deliberate indifference test. Therefore, he has failed to state a claim against defendants John Doe II and John Doe III for violating his due process rights. Moreover, Claim Three does not allege any facts regarding defendants Robinson and Meyer, nor does it allege any facts to support of claim for violation of the plaintiff's First Amendment rights. Claim Three should be dismissed. In addition, defendants Jane Doe III, John Doe II, and John Doe III should be dismissed from the action because they are implicated in Claim Three only.

### 4. Claim Four

Claim Four alleges that defendants Robinson and Meyer violated the plaintiff's First Amendment, Eighth Amendment, and due process rights when the plaintiff was repeatedly denied exercise, access to reading and writing materials, access to grievances, medical

---

[6]Although the plaintiff alleges he was in "total isolation," he also alleges that he was transported to Denver Health Medical Center 3 times and was visited by nursing personnel on several occasions during his five day period of medical isolation.

requirements, and the right "to voice protests in regard to these matters" from May 16, 2012, to June 27, 2012, "all under the auspices of the rules, regulations, and policies of both defendants."

In my analysis of Claim One, I found that the plaintiff has stated a claim against Robinson and Meyer in their individual capacities for the alleged policy under which Jane Doe I refused the plaintiff's requests for medication while in the booking department on May 16 and 17, 2012. To the extent Claim Four addresses those actions, it is redundant of Claim One.

Claim Three fails to allege an underlying constitutional violation. Consequently, with respect to that claim there is nothing for which Robinson and Meyer can be held derivatively accountable. Christensen v. Big Horn County Bd. of County Com'rs, 374 Fed.Appx. 821, 827 (10th Cir. 2010).

As to the plaintiff's remaining allegations regarding access to grievances and the right to voice protests, he has not alleged sufficient facts to state a claim for violation of his constitutional rights. The right to access the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). The filing of an administrative grievance is protected under the First Amendment. Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991). However, an inmate alleging denial of access to the courts must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Id. at 356. Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351). The plaintiff does not allege that he suffered an actual injury as a result of being denied grievances.

The plaintiff's claim regarding his "right to voice protests" is not clearly stated in the Complaint. In his Response, the plaintiff states that he "faced possible administrative detention

for exercising his right to freedom of speech." *Response*, p. 6 (internal quotations omitted).  He cites to page 3D of his Complaint (page 9 in the court's docketing system) where he alleges that "[o]n June 6, I was written up for 'Failure to Address Staff Properly' after complaining about having to wait five days to get medication for my feet.  I was also transferred to another tank, 3A, and face possible administrative detention, the hole, for that write up."  The plaintiff attaches to his Response the papers related to the write up. *Response*, Exs. 3 and 4.  On a motion to dismiss, the court may consider indisputably authentic copies of documents if plaintiff referred to them in the complaint and the documents are central to the claims.  See GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384-85 (10th Cir. 1997).  The papers make clear that the plaintiff was not disciplined for complaining about his medical care; he was disciplined for referring to the nursing staff as "idiots," "stupid," "incompetent," and "morons."  The plaintiff's First Amendment claim should be dismissed as frivolous.

Beyond the allegations of Claim One, the plaintiff has not alleged sufficient facts to show that Robinson and Meyer promulgated rules, regulations, and policies that resulted in violations of his  First Amendment or due process rights.  Claim Four should be dismissed for failure to state a claim upon which relief can be granted.

### 5. Claim Five

In Claim Five, the plaintiff alleges that defendant Robinson violated the plaintiff's Fourth and Fourteenth Amendment rights when he was forced to submit to a DNA swab sample pursuant to "Jail, Sheriff's, policy."  In his Response, the plaintiff states that "it is apparent that Defendant Robinson was acting under the law by requiring Plaintiff to submit to a DNA swab as part of the booking procedure" and "in view of this the first part of this claim must fail."

*Response*, p. 5. I construe the plaintiff's response as an abandonment of his claim against Robinson. See Nard v. City of Oklahoma City, 153 Fed.Appx. 529, 532 n.3 (10th Cir. 2005) (construing plaintiff's acknowledgment that his claims must fail as an abandonment of the claims). However, the plaintiff states that he was "assured that should he be found not guilty of the charges he was arrested for then said sample would be destroyed," and he "merely ask[s] that this commitment be honored." *Response*, pp. 5-6. The plaintiff's request does not constitute a claim upon which relief may be granted. Claim Five should be dismissed.

Claims Two, Three, Four, and Five fail to sufficiently allege a violation of the plaintiff's constitutional rights by defendants Robinson and Meyer. Therefore, Robinson and Meyer are entitled to qualified immunity with respect to Claims Two, Three, Four, and Five as asserted against them in their individual capacities.

### B. Official Capacity Claims

The defendants assert that the claims against them in their official capacities must be dismissed because the plaintiff "has failed to reasonably identify any illegal policy or custom that was purportedly adopted and/or executed by Defendants." *Motion*, p. 18. "A section 1983 suit against a municipality and a suit against a municipal official acting in his or official capacity are the same." Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998) (internal quotations and citation omitted).

In Monell v. New York City Dep't of Soc. Services, 436 U.S. 658 (1978), the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

16

official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A policy is a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entities' officers. Id. at 690. A custom is a "persistent and widespread ... practice[] of ... officials." Id. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970)).

Claims Two through Five fail to state a claim upon which relief can be granted regardless of whether the defendants are sued in their individual or official capacities. However, in Claim One, the plaintiff alleges that although it was evident that he was in distress, Jane Doe I refused his requests for medications pursuant to a policy promulgated by Robinson and Meyer. Therefore, Claim One should remain against defendants Robinson and Meyer in their official capacities.

## IV. CONCLUSION

I respectfully RECOMMEND that Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b) [Doc. #17] be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED insofar as it seeks dismissal of Claims Two, Three, Four, and Five as against all defendants; and

2. DENIED insofar as its seeks dismissal of Claim One.[7]

---

[7] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

I further RECOMMEND that defendants Jane Doe II, Jane Doe III, John Doe I, John Doe II, and John Doe III be DISMISSED.

Dated May 29, 2013.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge