IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-01689-BNB-KMT

BRIAN PATRICK SPENSER PERCEVAL,

Plaintiff,

v.

GRAYSON ROBINSON, Sheriff,
ELAINE MEYER, Health Services Administrator, and
Linda C. Ross, L.P.N.,

Defendants.

---

## ORDER

---

This matter arises on **Defendants' Motion for Summary Judgment** [Doc. #77, filed 06/13/2014] (the "Motion").  The Motion is GRANTED.

## I.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.   UNDISPUTED MATERIAL FACTS

1.   The plaintiff was transferred to the Arapahoe County Detention Facility ("ACDF") from a Denver jail at approximately 1:30 p.m. on May 16, 2012.  *Second Amended Complaint* [Doc. #65], p. 3, ¶ 13; *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* [Doc. #79] (the "Response"), footnote 3.  At all times pertinent to the allegations of the Second Amended Complaint [Doc. #65], the plaintiff was a pretrial detainee at ACDF.  *First Amended Complaint* [Doc. #9], p. 14.[1]

2.   Accompanying the plaintiff in a separate bag carried by a deputy were his civilian clothing and three medications: a labeled albuterol inhaler, an unlabeled inhaler, and a bottle of

---

[1]The First Amended Complaint is not consecutively paginated.  Therefore, I cite to the page numbers of the First Amended Complaint as they are assigned by the court's docketing system.

nitroglycerin tablets.  *Second Amended Complaint*, p. 3, ¶ 13; *Motion*, Ex. J, p. 2; *Defendants'*

*Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* [Doc.

#81] (the "Reply"), Ex. K, 13:17-15:1.

     3.   The plaintiff identified the Veteran's Administration ("VA") as the pharmacy where

he received an inhaler and nitroglycerin tablets.  *Motion*, Ex. B, 12:7-22; Ex. A, 37:20-38:6; Ex.

D, ¶ 4; Ex. E, 24:12-25:11.  Another inhaler was marked as being prescribed while the plaintiff

was incarcerated at the Denver jail.  Ex. B, 13:24-14:4.

     4.   Pursuant to ACDF policy, when an inmate comes into the facility with medications,

those medications are taken, logged, and depending on the type of medication, placed in the

infirmary for safe keeping.  Id. at Ex. E, 10:19-11:7; Ex. C, 31:16-32:18.  Once medications are

verified, they are made available to a patient.  Id. at Ex. C, 16:24-17:4 and 18:19-19:1.  The

booking nurse at ACDF verifies medications by completing a Release of Information form and

submitting it to the pharmacy that filled the prescription.  Id. at Ex. A, 38:7-10 and 62:14-19;

Exhibit C, 103:19-104:4.

     5.   The medications that came into the facility with the plaintiff were taken, logged, and

placed in the infirmary by Nurse Paula Bertram on May 16, 2012.  Id. at Ex. E, 10:19-11 :7; Ex.

F; Ex. G; *Reply*, Ex. M, 12:6-13:20.

     6.   At 10:48 p.m. on May 16, 2012, Nurse Sandy Marsyk sent a fax to the Denver VA

office seeking verification of the plaintiff's medications.  *Reply*, Ex. M, 24:9-27:19; Ex. O; Ex.

N, 38:11-39:6.

     7.   According to the plaintiff, his rescue inhaler (which contains Albuterol) was used to

dilate his bronchial tubes when he experienced difficulty breathing and felt like he was going to

collapse. *Motion*, Ex. B, 24:9-15; *Response*, Ex. 4, 8:1-10-2.  He typically took three to four puffs of the rescue inhaler per day when undergoing "any manual exertion."  *Response*, Ex. 4, 9:15-22.

8.   In May 2012, defendant Ross, an LPN at ACDF,  was working as a booking nurse. *Motion*, Ex. A, 6:2-10.  An LPN booking nurse gathers medications, gathers information, verifies medications, and takes vital signs of patients.  Id. at 6:11-21; Ex. C, 11:9-16.

9.   On May 17, 2012, Ross conducted an initial medical screening of the plaintiff that included an interview and exam.  Id. at Ex. A, 44:4-9.  The plaintiff reported that he had a history of heart disease and asthma.  Id. at Ex. H; *Response*, Ex. 2, 58:14-25.  Ross conducted an exam, found he had no shortness of breath, placed him in the Chronic Care Book[2], and sought a medical review for medications.  *Motion*, 58:14-15; Ex. D, Ex. H; *Response*, Ex. 2, 58:14-25.

10.   By the time of Ross's interview with the plaintiff, the Denver VA office had verified to the ACDF that the medications last provided to the plaintiff were an albuterol inhaler, nitroglycerin, and others.  Id. at Ex. H; *Response*, Ex. 2, 45:23

The plaintiff initially asserted five claims.  Claims Two, Three, Four, and Five have been dismissed [Docs. ##29 and 33].[3]  Claim One alleges that defendants Ross, Robinson, and Meyer violated the plaintiff's due process rights when, on May 16 and 17, 2012, Ross refused the

---

[2]Placing a patient's name in the chronic care book was the method used by the ACDF to notify the doctors of patients with chronic issues.  *Motion*, Ex. A, 13:4-14; Ex. C, 20:3-10.

[3]The plaintiff was permitted to amend his First Amended Complaint to identify Jane Doe I as defendant Ross [Doc. #63].

plaintiff's requests for his medications pursuant to a policy promulgated by defendants Ross and

Meyer.  *Second Amended Complaint*, ¶ 39.

### III.   ANALYSIS

The defendants assert that they are entitled to qualified immunity.  *Motion*, pp. 11-12.

Qualified immunity shields government officials from liability for civil damages provided that

their conduct when committed did not violate "clearly established statutory or constitutional

rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800,

818 (1982).  Qualified immunity not only shields a defendant from unwarranted liability, but

also protects the defendant from the burdens of defending a suit.  Medina v. Cram, 252 F.3d

1124, 1128 (10th Cir. 2001).  The qualified immunity defense is available only to government

officials sued in their individual capacities.  Buchwald v. University of New Mexico School of

Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts a qualified immunity defense on summary judgment, a heavy

two-part burden shifts to the plaintiff.  Medina, 252 F.3d at 1128.  The plaintiff must establish

that "the defendant's actions violated a constitutional or statutory right."  Scull v. New Mexico,

236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted).  The plaintiff must

also show "that the constitutional or statutory right the defendant allegedly violated was clearly

established at the time of the conduct at issue."  Id.  "For a constitutional right to be clearly

established, its contours must be sufficiently clear that a reasonable official would understand

that what he is doing violates that right.  This is not to say that an official action is protected by

qualified immunity unless the very action in question has previously been held unlawful; but it is

to say that in the light of pre-existing law the unlawfulness must be apparent."  Hope v. Pelzer,

536 U.S. 730, 739 (2002) (internal quotations and citations omitted).  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."  Medina, 252 F.3d at 1128.

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The plaintiff claims that the defendants violated his due process rights.  The Tenth Circuit Court of Appeals has stated that although "[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983."  Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999).  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care."  Id. at 104-05.  To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious.

Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one

that has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention."  Hunt v. Uphoff,

199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.

1980)).        The subjective component to a deliberate indifference claim is met if a prison

official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S.

at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw the inference."  Id.

## A.  Defendant Ross

The plaintiff alleges that Ross violated his constitutional rights when she refused his

requests for his inhaler and nitroglycerin pursuant to policy on May 16 and 17, 2012.  However,

he does not provide any competent evidence to create a material fact dispute regarding whether

Ross was deliberately indifferent to a substantial risk of serious harm.  He does not provide any

evidence to show that Ross had any contact with him before or after she conducted the medical

interview on May 17, 2012, or that she denied him necessary medication at any time.  To the

contrary, he was confused as to which duties were performed by Ross:

| | |
|---|---|
| Q | So the release for the VA info, do you know which nurse that was? |
| A | I think--I believe it was Linda Ross.  I mean, its in the discovery material, but I believe that's who it was. |
| Q | And it--was that the same nurse that you claim denied you the use of your inhaler? |
| A | That's where I get confused, because it was the same nurse on duty in the late afternoon of the 16th, the 17th.  Now, whether that was |

her or the Iverson nurse, I'm not sure without looking at the documents.  I--I've been through them time and time again.  I can't really nail it down as to who was there at that time.

Q       Okay.  Okay.  So let's go back to the 16th.  When did you first ask to use your albuterol, and who did you ask?

A       First, I asked--well, when I was in the temporary holding cell, I--you could actually sort of, like, peek out the door.  If I saw a deputy coming by, I'd bang on the door and tell him I need to use my inhaler and was just ignored.

                                          * * *

        I mean, you could barely see them.  Its just a crack through the door, but--and then I did ask the nurse later on, the one who I signed the release for.  I asked her, then, too.

Q       Okay.  So--because--I want to make sure--I want to make sure we understand who Jane Doe I is and who is the nurse.

A       Correct.

Q       So the one that you signed the release of info with is the one that you asked for the use of your albuterol the first time on May 16th?

A       Correct.

*Response*, Ex. 4, 15:3-16:13.

        The record shows that the nurse who signed the release of information form was Sandy Marsyk, not defendant Ross.  The only competent evidence regarding Ross is that she examined the plaintiff on May 17, 2012, and the plaintiff did not exhibit any symptoms warranting treatment at that time.  There is no evidence in the record from which a reasonable inference can be drawn that defendant Ross was deliberately indifferent to the plaintiff's medical needs.  The Motion is granted insofar as it seeks summary judgment in favor of Ross.

## B.   Defendants Robinson and Meyer

The plaintiff alleges that while he was in the booking department on May 16 and 17, 2012, he requested his medications for shortness of breath and chest pains, but the request was denied pursuant to a policy made by Robinson and Meyer. *Second Amended Complaint*, ¶ 39. In his Response, the plaintiff identifies the policy as one that requires that rescue inhalers be denied to inmates unless they are actually wheezing. *Response*, pp. 1, 21.  The plaintiff does not contend that any policy, custom, or practice prevented him from receiving medications for his heart condition.  Therefore, I deem abandoned the portion of Claim One that challenges unavailability of the plaintiff's heart medication due to ASDF policy.

An individual cannot be held liable under section 1983 unless he caused or participated in an alleged constitutional violation.  McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability.  Id.  In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted).  Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official.  Id. at 1163.

The undisputed evidence shows that the policy in question was made by the medical director, Dr. Pitcher--not by defendants Robinson or Meyer--and was continued by Dr. Pitcher's successor, Dr. Grope.  *Response*, Ex. 1, 83:1-23; Ex. 2, 26:20-27:16.  Meyer is the health service

administrator for ACDF. She oversees the medical care provided to patients and the budgets of the staff. The doctors are not employees of ACDF, and she does not oversee them. Id. at 7:15-24. Defendant Robinson is the Arapahoe County Sheriff. *Second Amended Complaint*, ¶ 4. There is no competent evidence in the record to create a material fact dispute regarding whether Meyer or Robinson possessed any responsibility for the promulgation, creation, implementation, or continued operation of the policy.

Moreover, there is no evidence that the policy was created with the deliberate indifference necessary to establish a constitutional violation. Finally, the record contains no evidence that the plaintiff suffered a violation of his constitutional rights due to adherence to the policy, *i.e.*, that he was denied necessary medication because he was not audibly wheezing. To the contrary, the plaintiff testified that his requests for an inhaler were either ignored altogether, refused because his prescription was not completed, or he would request his inhaler then refuse to use it because the nurse required him to don an isolation mask.[4] *Motion*, Ex. J, pp. 2-4; *Response*, Ex. 4, 15:19-22:21.

The plaintiff has not provided any evidence to demonstrate that defendants Robinson and Meyer violated his constitutional rights. The Motion is granted insofar as it seeks summary judgment in favor of Robinson and Meyer.

## IV. CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment [Doc. #77] is GRANTED. Summary judgment shall enter in favor of the defendants.

---

[4]The plaintiff was placed in an isolation cell from May 17 to May 23, 2012, because he reported that he had tested positive for tuberculosis. *Response*, Ex. 4, 19:3-20:4.

Dated August 26, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge